Good morning, your honors. May it please the court. Daniel Scott Harawa on behalf of the appellant Raymond Tate. I'd like to reserve five minutes for rebuttal over a series of cases from Farmer v. Brennan to Hudson v. McMillan and Wilson v. Sider. Did you say Farmer versus Brennan? Yes, sir. The Supreme Court... I understand. I know the case, but I didn't understand that that was a Bivens case. So I think, your honor, it is a Bivens case, and I'll explain why. Well, I understand you have to explain that it's implied, but they didn't address Bivens in there, did they? Your honor, a Bivens question is an antecedent question to whether or not... I understand, but the fact that we decide a case without addressing subject matter jurisdiction doesn't mean we decided subject matter jurisdiction in a case. Well, here is why I think this court should recognize Farmer as a Bivens case. The Supreme Court has said there is no meaningful difference between various kinds of deliberate indifference as the court said unequivocally in Wilson v. Sider, and I quote, the medical care a prisoner receives is just as much a condition of his confinement as the food he has fed, the clothes he has issued, the temperature he is subjected to in his cell, and the protection he has afforded against other inmates. My recollection is that that discussion, which I agree it says that, that's in the context of discussing what the men's, the scienter requirement should be. Is that right? Yes. Okay. And your honor, and that's why in Carlson and Farmer and Wilson, the Supreme Court has made clear that it doesn't see any meaningful distinction between the various types of deliberate indifference claims. All of the claims involve prison officials who disregard a substantial risk of harm to the health or safety. Well, that's probably the issue in this case, the level of generality that the Supreme Court has applied in determining whether it's an allowable Bivens case. As I understand it, Farmer really stands for the proposition that there is an Eighth Amendment claim with respect to protection against punishment from other prisoners or violence in the prison. And Carlson, I gather, is adequate medical care there. The person suffered from asthma and died while in prison. Is that right, those two cases? Yes, your honor. In this case, we have a retaliation claim, I guess. I'm not sure what, I'll ask you about that. But we also have mainly conditions of prison, horrendous, alleged horrendous conditions of prison. Yes, your honor. And your honor, the reason why that's not different, if you move beyond even the statements in Farmer and Wilson where the court said, we don't see any meaningful distinction, if you apply the Abbasi factors, there's also no meaningful difference between the claim that Mr. T alleged here and the claim that was recognized in Carlson and we argue was applied or implied in Farmer. So if you look at the ranks of the officers, it's the same. If you look at the type claim, it's the same. If you look at the level of judicial guidance, it's exactly the same. So your honor, we argue that the Abbasi factors, which this court has to apply in determining whether this is a new context or not, make clear that this isn't a new context in any meaningful way. And if you look at the type of facts that the Supreme Court and this court have said makes the case meaningfully different, they're nothing like the facts here. So if you look at- Is this with regard to the failure to protect claim, the confinement claim, or both? So your honor, I think the failure- So right now, I'm mainly talking about the conditions of confinement claim. Not the failure to protect. I think the failure to protect claim is the exact claim that was at least acknowledged or tested. Well, can I ask you then about the conditions of confinement? I worry that it is meaningfully different maybe, and here's why. Because the case where the court says you have to provide medical care, that is a don't fail to treat this really serious condition, which requires judgment. Don't get me wrong. It requires doctors. But it says don't fail to fix this one discrete thing. Whereas here, when I look at your conditions of confinement claim, and I say this advisedly, and I don't mean to minimize what sound like some very significant problems at this prison, it seems to be the global complaint is run a better prison in lots of different respects. And that starts to sound a lot more open-ended than don't fail to treat this one identifiable medical. So under Abbasi, why isn't that a different context? So I think if we look back to Carlson, I hopefully can tease this out for you, your honor. So in Carlson, part of the claim was the adequacy of the facilities. And then part of the claim was the way the defendants reacted to the prisoners in that case medical condition. And the same thing is true here. If we are just talking about a prison with terrible conditions, then maybe that looks just like the medical facility. But there are also the inactions and actions of the defendants that exacerbated the conditions that makes it, in my view, not meaningfully different from Carlson. And so if I could give an example, and I hesitate because this may not be a good one, but let's say Bivens, an excessive force case, the excessive force was shaking the person around, right? And then the next case is the officer kicking them really hard in the shin or punching them in the face, causing different levels of injury. I don't think that is the type of factual distinction that would require this court to recognize a new Bivens context. Sorry, give me the first situation in the hypo again. I just want to make sure I'm following. So let's say Mr. Bivens was at home and he got shook up by the officers when they arrested him. So they physically shake him, okay. Yeah. And then let's say the next plaintiff comes into court and says, no, the officer punched me in the face and it caused a lot of damage. I don't think that is the type of factual difference that makes the case meaningfully different from previous recognized Bivens claims. And none of the facts here are similar to the facts, again, in the recent Supreme Court cases, they all involve national security, foreign policy implications. In the cases that this court has looked at, they involve different constitutional amendments. They involve different classes of defendants. None of them involve the type of factual differences here. And then I think even if you look at the Supreme Court's decision in Egbert, which I know at first glance may seem to caution against recognizing Mr. Bivens' claim, I actually think it's the opposite. So the reason, one of the reasons perhaps why the Supreme Court hasn't seen fit to overrule its trilogy of Bivens cases is because Congress legislated with the idea that there was a Bivens action available for certain kinds of injuries. So by the time Congress passed the PLRA in 1996, federal prisoners had been bringing Bivens actions in light of Carlson for almost two decades at that point. And those claims weren't just medical care claims. There were also conditions of confinement claims. There were also failure to protect claims, as in Farmer v. Brennan. And Congress, in overhauling the prison litigation process, left those claims alone. And you have to assume, as the Supreme Court legislates, with the understanding of what's going on in the courts. And I think that is one reason why the court hasn't just seen fit to overrule these cases, because Congress has done a lot of legislating. Can I ask you about that? I'm trying to figure out the strength of that inference. Because of course, I mean, if the only conditions of confinement claims brought by prisoners were brought by federal prisoners, I think that's a fairly strong inference. But the vast majority of prisoners are state prisoners. And the PLRA doesn't just regulate Bivens actions brought by federal prisoners. It regulates the far more common example of Section 1983 claims brought by state prisoners. So what do I do with that fact? I mean, I guess one way to say it is, are there any provisions of the PLRA that apply exclusively to Bivens actions brought by federal prisoners and not 1983 actions brought by state prisoners? Not to my knowledge, Your Honor. But the reason why I don't think that inference in the hypothetical that you just drew necessarily holds is because if anything, you would assume Congress would be just as cognizant of what's happening in the federal prisons over which the federal government superintends. And if the federal government wanted to foreclose claims in that context, it certainly knew how. Well, maybe. But I guess I've always understood the PLRA as being more about the federal courts than anything else, that the federal courts are being swamped by enormous quantities of prisoner litigation. There's some incredible percentage of federal civil litigation is without necessarily caring where the prisoner is a prisoner. I mean, I think in addition to that, though, Your Honor, it would be somewhat anomalous for Congress to say, state prisoners, we're going to create all of these obstacles before you can sue in federal courts. We're going to let federal prisoners continue to bring suit. In light of far more just happening just two years prior, we cite various cases in our reply brief that are the year of the PLRA. So, it's not as if these claims were happening at all. And so, I think it would be strange to think that given the recency of farmer, given the fact that these claims, even if they're not the vast majority of prisoner claims, they were being brought. And given the fact that these claims involve the federal government of which Congress is presumably concerned, that Congress, again, the PLRA is quite comprehensive in scope. And the fact that Congress said nothing, I think, militates in a different direction than a lot of the other more recent Bivens cases that the Supreme Court has. There's a lot of collateral discussion in both Ziegler and Egbert about that seems to undermine a little bit what you're arguing. I mean, first of all, I don't remember the court ever citing farmer as a Bivens case, and they purported to list every one in their opinion. And second, they seem to think that they are not going to create causes of action under the Constitution and keep the tightest rope they can around just the three they have. As a matter of fact, they even expressed doubt about those three and saying that today, we for us to expand Bivens to another type of claimed prison conditions would be a substantial opening because we do get a lot of prison condition cases. And they may be with some merit because a lot of prisons aren't luxury hotels. But the sense I take, and I think it's a fair sense from the Supreme Court's recent cases on this, is that we ought to be really cautious. As a matter of fact, they're not sure they want us to recognize anything except ones that are just dead on. I mean, they've cited differences that seem to me hardly are differences that they say are still taken out of the Bivens context. Sure. So, if I can respond, Your Honor, the Third Circuit in Bistream said, when discussing whether Farmer is a Bivens case, said the reason why the Supreme Court may not have seen the need to discuss it as a new Bivens case because it was applying the exact same type of Bivens claim recognized in Carlson, which brings me back to Wilson and Hudson and Farmer, where they discuss all of these claimings as being somewhat fungible in how courts should view them. And I think it's not as if, when Farmer was decided, the Supreme Court didn't have Bivens on its mind. That same year, FDIC versus Meyer was decided, in which the Supreme Court refused to recognize a Bivens remedy. So, it's not as if Bivens was just in the shadows, just not on the court's docket anywhere. So, I think the Third Circuit's kind of read of Farmer in that regard is a good one. And Your Honor, I think your point about federal prisoners, and I think this goes back to the PLRA, is that all types of prisoner litigation claims are weeded out. Congress did that intentionally. I think it's more the fair read of what happened here is that only the most egregious constitutional claims will even make it into a court past a screening. And to say that those people who are the most vulnerable in a society have no kind of redress or violations of their constitutional rights, and they have no... The Supreme Court has addressed that exact question and says, it's not for us to hear. You give that to Congress and have them create the causes of action. And it seems to me that's exactly the message they're conveying. They're saying, we probably overstepped that corollary in our Bivens cases. And basically, they said, since then, they haven't recognized a single case out of how many years? I agree that the court has said that it probably overstepped. And it is a new day when it comes to Bivens and the Supreme Court. But what the court hasn't done is overrule its prior cases because the Congress has litigated as a Biven. They've told us how to take those cases. In other words, they have the Bivens cases and the question is, how specific does a future Bivens case have to be? How close does it have to be to the three that were adopted? And it seems to me, even if you accept Farmer, the argument is... The issue actually is whether protection from violence, protection of prisoners from violence of fellow prisoners, whether that's the same as conditions of prison involving dirty conditions, whatever, not adequate sleeping facilities, mattresses, and all that type of thing. And I think, Your Honor, this isn't just an intuitive, are there factual differences? The Supreme Court actually gave us factors to apply to make that determination. And this court has applied those factors in at least three different cases. And none of those factors are militating in favor of this being a meaningfully different. I think the word meaningful matters here. The Supreme Court, I don't think used it accidentally. None of those factors suggest that this case is meaningfully different. And so, yes, there are going to be factual differences between each case. But I think being faithful to Supreme Court precedent and applying the factors, which my friends on the other side don't, because they only lead one way and that one way is recognizing Mr. Tate's condition of confinement claim. And really quickly about the failure to protect claim. Again, we think that is the exact same claim recognized in Farmer. The district court didn't address it. The defendants did not address it. And so, we... I'm sorry. I know you're... Can I ask one last question? Of course. On the failure to protect claim, the district court did say, I thought, in denying the motion for reconsideration, look, you haven't... There are allegations that this happens, but no allegations that it happened to him. Where's the... Did the district court get that wrong? And where's the allegation I should be looking at? Sure. So, Your Honor, I think the allegation is similar to the allegation recognized by the Third Circuit in Morby Man. And what Mr. Tate's allegations were, were that the prison officials labeled him as gay, as coming on to male staff in the prison in order to incite prisoner violence against him. Now, I will concede that Mr. Tate does not allege that he suffered any violence at the hands of any other prisoners. But I think as this court said, and I believe it was Porter v. Clark, whether or not somebody suffers violence doesn't go to whether or not they allege the claim is more of a question of damages. Excuse me. And so, I think that goes to the allegation. Why isn't it a question of harm in an injury of fact sense? I mean, if he doesn't allege that anything bad happened to him as a result, why isn't that just like bad government conduct in the ether that doesn't support standing? Well, he doesn't allege physical harm. He does allege mental suffering, Your Honor, as a result of the allegations. Okay. Thank you. You have some rebuttal. I'll come back. Yeah. Ms. Frist. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Krista Frith on behalf of the 12 BOP employees sued in their individual capacities by Mr. Tate. This court should affirm the district court's dismissal of Mr. Tate's complaint because in Egbert v. Voulet, the Supreme Court foreclosed any damages remedy for inmates against BOP employees for unlawful conditions of confinement. In Egbert, the Supreme Court held the question of whether a damages remedy exists boils down to one question, whether there is any reason to think Congress might be better equipped to create a damages remedy. If there is one rational reason, just one, which the Supreme Court emphasized... Can I ask you a threshold factual question that the parties seem to join issue over? Would the Westfall Act preclude a state law lawsuit in this instance? Not necessarily. The Westfall Act would require the attorney general to determine that the attorney general did so, then yes. And as a former government employee, would I be wrong in surmising that the attorney general very rarely concludes that BOP officials were not acting in the scope of their employment? That is my understanding. However, I do know there are instances where BOP officials are clearly acting outside of the scope of their employment and the Department of Justice prosecutes. Well, sure. I mean, if they assault a citizen on the street, that's pretty easy. But how often does the attorney general conclude that something a BOP official does in a prison to a prisoner is not in the scope of their employment? Prisoner on prisoner. I'm sorry. How often does the attorney general conclude that something that a prison official does to a prisoner inside a prison is not within the scope of their employment? I don't have any data on that, Your Honor. But for example, there are cases where a BOP employee does not conduct his requisite rounds. And as a result, an inmate is murdered or commits suicide. And those BOP officials have been prosecuted by the Department of Justice for failing to do those rounds and lying on their log sheets about doing those rounds. Going back to Egbert, the court noted that the answer as to whether Congress is better equipped to create a damages remedy is yes in, quote, almost every case. Counsel, just so I understand the order of operations. I mean, if this were a inadequate medical treatment claim, are you suggesting that we would start by saying, is there a reason that Congress would be better positioned than the courts to decide this? Oh, yes, there is. So there's no claim. Or don't we start from the fact that Carlson is good law? And is this an extension from Carlson or not? Your Honor, under Egbert, no. We should start with the- So you think we're free to overrule Carlson? Like if I think Congress is better situated than this court to create a cause of action for failure to provide adequate medical care in prison, then this court could decide today Carlson is no longer good law? Yes, Your Honor. Under Egbert- Sorry, forward looking. I thought the Supreme Court recognized Bivens' claims. Yes, it did. It invited the opportunity to overturn Bivens. I understand, but they decided Carlson and it's still good law today, isn't it? The holding, the outcome of Carlson, the Supreme Court- No, the holding of the Bivens' action in Carlson was upheld, was it not? Yes, it was, Your Honor. Now, if we had a case under Carlson, then we would have to recognize that case, would we? No, Your Honor, and this is why. You mean we're going to flout the Supreme Court's holding? No, Your Honor. Well, that sounds to me like what you just said. Under Egbert, the analysis, in Egbert, the Supreme Court explained, even if there are parallel circumstances, which the Fourth Amendment- Every Bivens' actions falls into your case, and the court chose not to overrule Bivens. It did in the facts and circumstances. I mean, you get the Fourth Amendment case in Bivens itself. Yes, Your Honor. And Congress could easily take care of that. Yes, it could, Your Honor, and in Egbert, the Supreme Court said that even if there are parallel factual circumstances- Now, that was a different part of the analysis. That's at the back end about special factors, and the argument is you can't any longer say, look, in Carlson, there weren't any special factors, so there ought to be no special factors in my conditions of confinement case either, because it would basically be the same thing. But you understand the Supreme Court in Egbert to have invited the lower courts to go ahead and get rid of Carlson, Bivens, and Passman. I mean, the courts would basically overrule- The courts would overrule- That's what I'm saying. Not directly, Your Honor, because what Egbert did in the Fourth Amendment discussion is that even if there are parallel circumstances, you must still look to determine whether  I've assumed that that was exclusive of the Bivens cases recognized. In other words, it seems to me the first analysis is, is this an authorized Bivens claim? If it is, it goes forward. If it's not, then before you extend Bivens, you have to conduct the analysis including the quote you just gave us. But I didn't see the Supreme Court inviting the lower courts to overrule its decision. Under Egbert, I think Carlson- You don't need to argue this harsh. Go ahead, continue. I am interested in your theory of why it is that we can overrule Supreme Court cases now, because I have a whole list. And perhaps I did not address this question sufficiently. We're not suggesting that this court overrule Carlson, and we are not asking for that. That is not before the court. We have not argued that. But are you saying if we are presented with a case that is materially identical to Carlson, we should say there's no Bivens action? Not necessarily. You still have to do the special factors analysis, and that's what the court did. Well, the special factors, they all, it's the same case. The hypothetical given to you is that we have the same case, factual case as Carlson. Except his name is Smith now. Yeah, now it's Smith. He has asthma. They don't treat his asthma. They give him- And he dies in prison. So we have that case before us, and we conclude that Congress could well have addressed that, that medical care in prisons should be equal to the level of provision of medical care in the community or something like that, and create a cause of action. You're suggesting that if we reach that conclusion, we shouldn't follow Carlson, right? Correct, Your Honor. And this is because, this is what the Supreme Court explained on page 1805 of Egbert, that if there is any rational reason that the court did not consider in Bivens-Hassman, or in your hypothetical Carlson, not to extend a Bivens remedy on those facts, then it should decline to do so. But we're not extending it. It's, in our hypothetical, it's just Carlson. Correct, and again, if- It seems to me that demonstrates that analysis comes in only when we have the question before us of whether to extend Bivens. Yes, Your Honor, and it is our reading of Egbert that regardless of whether it is a new context, the court must still employ a special factors analysis. But we've perhaps gotten far afield because this is not the case of Carlson. This is a new context. But most importantly, there are- I understand just, are you changing your view now? Or do you think if we had a Carlson case now, we should overrule it? No, I'm not changing my view, Your Honor. I mean, so we should overrule Carlson if we had a direct Carlson case, and we concluded that Congress could address it. Yes, Your Honor, and I don't think the court would be overruling it, I think Carlson is under questionable ground after Egbert. The Supreme Court explained in Egbert that its reasoning for its holdings in Bivens, Passman, and Carlson is no longer valid. That is not the analysis that the Supreme Court employs for Bivens cases any longer, suggesting that those three holdings are on very shaky ground. And if the precise factual scenario was, again, before the court, it is very likely that the court may not find there to be a damages remedy. Hasn't the Supreme Court said several times that even when its decisions appear to us to be on shaky ground, we are not at liberty to overrule them? We have to go ahead and wait for the Supreme Court to act first? Yes, Your Honor. And again, we are not asking for this court to overrule Carlson. And this court does not need to do that to affirm the district court's dismissal. This was a hypothetical discussion based on the fact that we had before us the same facts as Carlson. And I guess our questions show some surprise that you would even attempt to reach that far. It seems to me your argument is here today that this is not a Carlson case. Yes, Your Honor. This is not a Carlson case. This is a new context. There are very meaningful differences. And no matter how close the cases may seem, the Supreme Court time and time again, even in parallel circumstances, has still found it to be a new context. For example, in Abbasi, the Supreme Court acknowledged it was very similar to Carlson, yet it found it was a new context. In Malesko, the Supreme Court also acknowledged it was very similar to Carlson, yet it was also a new context. Can I ask you a specific question about the failure to protect claim? I assume the government, so, well, I guess you don't represent 1983 defendants, but is your understanding that to bring a failure to protect claim, you have to allege that something bad happened as a result of the failure to protect? There needs to be some injury, does not necessarily need to be a physical beating, for example. But yes, there does need to be some injury to have a cognizable failure to protect claim. Well, and then don't cases like Los Angeles versus Lyons establish that an inchoate fear that something might happen is generally not a constitutionally sufficient injury? That is correct, Your Honor. And so you would have to plead sufficient facts to show that there is some injury beyond just a fear that something would happen. And Mr. Tate has not alleged those. He's not alleged a failure to protect claim. And he did not argue a failure to protect claim in his brief either. He cabinet. Well, let's assume for the sake of argument that I think he has alleged a failure to protect claim is the fact that he may not have alleged that anything concrete happened to him as a result fatal to such a claim. Yes, we would take that position, Your Honor, because in order to have standing to bring such a claim, you would need to, you need to allege some sort of injury as a result of the failure to protect. Um, with respect to the special factors analysis, there are three principal reasons that Congress is better suited to fashion a remedy. First, there's alternative remedies, second, separation of powers, and third system wide consequences. First, looking at alternative remedies, there is the BOP administrative remedy process, which the court found was sufficient in all against trees. The 10th circuit found it was a sufficient reason not to extend the Bivens remedy and Silva. And the ninth circuit recently found it was a sufficient reason not to extend the Bivens remedy and Hoffman. As the, as this court explained in tune tune coasts, it does not need to be a perfect remedy. The purpose is of the other alternative remedies that provide that effect as well, such as the fear of criminal prosecution. There's also the office of internal affairs that investigates BOP employee misconduct. There's also the DOJ inspector general. These, these investigations and the fear of criminal prosecution provides significant deterrence and punishment for employee misconduct. Egbert also discussed that as a sufficient reason not to extend a Bivens remedy when it found that the internal investigation process used in against, uh, within the customs and border patrol was a sufficient reason not to extend a Bivens remedy in that case. Counsel, I'm sorry, can I take you back to, um, what I had thought we all assumed was sort of the first question, which is, is this an extension of Carlson or not? So your colleague's case, you know, makes on the other side makes a case. I probably can't paraphrase it as well as he said it, but that, um, you know, either way, whether it's this kind of a conditions of confinement claim or the allegation is this is a risk to health, you know, there's mold, I could get sick. Either way, through deliberate indifference, you have prison officials who are exposing your prisoner to a known risk to health or safety. Is it really a meaning? Why is it a meaningful difference that in one case they do it by making you sick? And in another case, they do it by not fixing you once you're already sick. What, why is that meaningful for these purposes? Yes, your honor. So for example, we could look at the differences in the defendants in, in Carlson, you had the doctors and other medical professionals who, who failed to provide the requisite medical care to the inmate as defendant. But sometimes the defendants in those medical treatment cases are not doctors. Sometimes they're just the line officers who don't get the person to the infirmary or something like that. Yes, your honor. If we look beyond just the defendants though, and let's look at the facts of Carlson against what Mr. Tate has alleged. In Carlson, Mr. Jones was hospitalized for eight days due to an asthmatic condition. The physician recommended he be transferred. Actually, I'm very familiar with the facts of Carlson, but I guess maybe if you could just jump to the one that makes this a meaningful difference. We have to look at the whole, the whole, all of the facts. And so we have significant and repeated failures of the defendants in Carlson that led to a really egregious outcome. Oh, is it how egregious the violation is? Is that what you're saying? That's meaningful difference? No, your honor. Okay, because I don't know any cases that say that. The difference is the failures. I'm just acknowledging that the outcoming Carlson was egregious. And in many of these cases, we do have unsavory facts. But with respect to the differences between Carlson and Mr. Tate's claims, we have repeated failures by medical staff to provide requisite medical care, failures to comply with doctor's orders, failures to have functioning equipment, failures to have licensed medical staff. I guess what I'm asking you, and again, I don't mean to cut you off, but for instance, Judge Hyten's had a suggestion for why this might be a meaningful difference. Does the government have a position as to why the factual differences that you are reciting are meaningful? Because I actually understand now in a way I didn't, that the government is not conceding that we couldn't overrule Carlson. But if we had a medical treatment case and it wasn't asthma, it was a heart problem. And, you know, the prisoner asked four times for heart medicine, not three times for asthma medicine. I actually don't think the government would be here saying, well, those are meaningful differences. So, what I'm asking you to tell me is why, what makes these factual distinctions meaningful for purposes of knowing whether we have moved past Carlson or we just have slightly different facts? One is in the provision of life-saving medical care, and one is in the provision of things like toilet paper, a mattress, and- Well, but also exposure to a health risk in the cell. That is alleged, that I was exposed to mold that would make me sick. Yes, he- So, it's not just toilet paper and mattresses. Yes. Mr. Tate does allege that he had mold exposure in his cell. I don't believe that he was making him sick or he had some allergy to the mold and that he was given cleaning supplies, but was not given sufficient cleaning supplies to address the mold. Those are very different allegations because, again, one is in the provision of failure to provide medical care, whereas the other is in with respect to, I'll call them creature comforts, with respect to the cleanliness of his cell, the amount of toilet paper he's provided, the size of his pencil. Let's then imagine a hypothetical where he says, there are vermin in my cell and I am going to get bitten and get sick. So, take out creature comforts, okay? Let's talk about really bad conditions that present a risk to health. Is that meaningfully different from Carlson? Yes, Your Honor. Okay, how come? Because one is in the provision of medical care and one is not in the provision- This seems like a tautology. I'm asking you, why are those two things meaningfully different? Yes, Your Honor. And you're just saying because they're different. Because one is with respect to how following doctor's orders and how to interpret and provide medical care, and the other scenario is not. And there's also a comedy, a waterfall of things that happened in Carlson. So, for example, in Carlson, if it was just one incident, right, he goes to the hospital for eight days and is released with the doctor's orders that he be transferred to another prison, and he's not, that would be a meaningful difference from the actual facts of Carlson. So, it's several things, the cumulative results, not results, but the cumulative facts of Carlson need to all be looked at. And those are not the facts that Mr. Tate has alleged here. In the advert, the Supreme Court cautioned lower courts with the watchword of caution when asked to imply a Vivian's remedy. Here, alternative remedies, separation of powers, and system-wide consequences demonstrate Congress is better suited to create a remedy. This court needs just one reason. Therefore, it should affirm the district court's dismissal. Thank you. Thank you. All right, Mr. Harawa? Yes. Thank you, Your Honors. Quickly. So, I think this goes to Judge Harris's question. It's not just a freewheeling, let me point to facts to decide what makes the case meaningfully different. The Supreme Court gave us guideposts in Abbasi that said, these are the types of factors that makes the case meaningfully different. None of the factors, facts pointed to by my friend on the other side are any of the same factors outlined in Abbasi. And in fact, if you look at every shooting involving national security, Egbert was a border patrol agent involving national security and immigration concerns. Abbasi was a post 9-11 case involving national security concerns. So, all of those cases, that's what makes the case meaningfully different. It's not just, well, the facts, if you look at them here are just slightly different or different in some way than the facts here. And that's why I think- Let me ask you this. It seems to me if a legislator was facing these different claims and deciding what remedies to provide, they might look at these two circumstances in the following fashion. They may say, in prison, we're going to provide doctors of certain caliber, we're going to require treatment, we're going to require this and that, we're going to require an infirmary and this type of thing. Whereas, in conditions of prison, they would say, okay, we're going to require a certain level of mattresses, we're going to require a certain level of toilet paper, we're going to require that the prisoners be given sufficient utensils to clean up their things. It seems to me, they would be talking about different things, even though at some point of analysis, as Judge Harris's questions point out, there comes to be some similarity. So, it seems to me that we focus on, is this really a different context? Is this a different issue that would be addressed legislatively? And that type of analysis hurts you more than the more logical analysis, which is legal analysis. How do prison conditions differ from withholding medical care? Your Honor, it's not a slam dunk anywhere. And I actually don't think the legislative concerns necessarily are as different. But I think that's sort of the mentality of the court was, these are types of remedies that legislatures would address. And if we would find that they're different remedies, then it seems to me that we may have a different context. But I may be wrong on that. I mean, the point is, they really wanted us to be fairly strict about this. It seems to me that's the message I take through these cases. And so, the question is, what level of requirement do we have? I gather if we had a Carlson case, you would ask us to follow Carlson, would you, and not overrule it? I don't think you have the power to overrule it, Your Honor. In fact, in Federal v. Lynch, which was decided just last year, this court allowed a Bivens case premise on inadequate medical treatment to proceed. And I didn't see the court calling Carlson into question there. But Your Honor, and that's why I don't think Egbert overruled, and it certainly didn't overrule, its more recent Bivens cases, Abassi, which told us how to do the analysis. And even though Justice Thomas and Egbert didn't take through the first Abassi factors, he made clear the factual differences that made Egbert different from Bivens would fit within the factors outlined by the Supreme Court in Abassi. And that's why- But didn't they even talk about, I can't remember it now, but didn't they even talk about different defendants and different, I mean, the stuff they talked about as material in other types of contexts might not be considered material. But even who you would name as defendants, I think, that type of thing. And again, it's true, Your Honor, but none of those differences are, even if they seem immaterial, they're not even, even those differences aren't implicated here. Well, it might be. You know, I think it's a fair claim that in Carlson, the healthcare providers failed, and that's who were sued as defendants. And here, it would be prison officials for the general conditions of prison. Now, obviously, you can have facts in the medical context where prison officials also didn't facilitate the medical treatment. But I don't even know if it would, Carlson would reach that. It might. But that's the type of problem we have to analyze. And if I could be really brief, Your Honor, because I see my time is up. Carlson also involved the defendants were also lying prison officials. They weren't just the medical staff in Carlson. And the Supreme Court did essentially- That's a good point. Draw that distinction. And I think Judge Harris's hypothetical is much better than mine, really shows why these two claims, it breaks down to say, I can leave you in your cell until you're sick. You have a remedy versus why don't I just give you the condition of your cell so you're never sick in the first place. Therefore, you don't need medical care. And I think if anything, the legislative prerogative would be to address the former situation and not the latter. So, we respectfully ask that the court reverse. Thank you. Thank you. Mr. O'Rourke, your court assigned on this. I want to thank you for your service. It's been excellent. I think you've made a wonderful arguments and this is what makes our system special in the world. We would come down normally to greet you. We're keeping the pandemic protocol still in place. So, we're not going to do it this time, but we will again when you come back. I know you'll all be back. I think, have you been here recently? I apologize. I withdraw my question. Thank you very much. Okay. We'll adjourn court for the day. The honorable court stands adjourned until tomorrow morning. God save the United States and its honorable court.
judges: Paul V. Niemeyer, Pamela A. Harris, Toby J. Heytens